**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

T.E.,                                              :
                                                   :
           Plaintiff,                              :
                                                   :          **Case No. 2:22-cv-3185**
           v.                                      :          **Chief Judge Algenon L. Marbley**
                                                   :          **Magistrate Judge Elizabeth P. Deavers**
WYNDHAM HOTELS & RESORTS,                           :
INC., *et al.*                                     :
                                                   :
           Defendants.                             :

## OPINION & ORDER

This matter is before this Court on Defendant Wyndham Hotels & Resorts, Inc's ("Wyndham") Motion to Dismiss (ECF No. 14) and Cincinnati Insurance Company's ("CIC") Motion to Intervene (ECF No. 7). For the following reasons, Wyndham's Motion to Dismiss is **GRANTED in part, DENIED in part** (ECF No. 14) and CIC's Motion to Intervene is **DENIED** (ECF No. 7).

## I.    BACKGROUND

This case arises under the Trafficking Victims Protection Reauthorization Act ("TVPRA"), 18 U.S.C. § 1595(a) and the Child Abuse Victim's Rights Act ("CAVRA"), 18 U.S.C. § 2255. Plaintiff T.E. alleges she was sex trafficked as a minor in hotels owned by Defendants Wyndham, Red Roof Inns, Inc., and Red Roof Franchising, LLC (hereinafter together referred to as "Red Roof"). (ECF No. 5, ¶¶ 4, 43). Plaintiff alleges Wyndham "facilitate[ed] violations of the TVPRA through [its] participation in the harboring, maintaining, soliciting, and advertising of Plaintiff and her traffickers," knowingly participating in a sex trafficking venture on its hotel properties, and financially benefitting from the sex trafficking she suffered. (*Id.*, ¶ 119).

1

Plaintiff argues that Defendants should have known she was a minor but ignored the alleged abuse. (*Id.*, ¶¶ 121–129). Plaintiff alleges that the hotel staff at the Days Inn—a Wyndham branded hotel where Plaintiff was trafficked—interacted with her daily and were aware that T.E. was bruised, starved, and drugged. (ECF No. 19 at 3–4). T.E. alleges that she was beaten by her trafficker in public spaces and forced to drink alcohol at the hotel bar. (*Id.* at 4–5). T.E. also alleges that Wyndham staff saw "johns" cycle through her room, had to regularly change sheets and linens in her room, disposed of excessive numbers of condoms, reported complaints about fighting to corporate headquarters, and had to call the police to address violent incidents. (*Id.* at 6). Plaintiff also argues that her trafficker used the hotel's Wi-Fi to post advertisements for the sale of her body. (*Id.* at 11). Finally, Plaintiff alleges that the Days Inn was closed in September 2021 because of "rampant narcotics, activity, prostitution, human trafficking, and other crimes." (*Id.* at 9).

Plaintiff commenced this action in August 2022 (ECF No. 1) and filed an Amended Complaint in October 2022 (ECF No. 5). On December 15, 2022, CIC filed a Motion to Intervene. (ECF No. 7). On January 17, 2023, Wyndham filed a Motion to Dismiss. (ECF No. 14). The parties have responded to both. (ECF Nos. 8; 9; 19, 23). Therefore, these Motions are ripe for review.

## II.     STANDARD OF REVIEW

### A.  Motion to Dismiss

This Court may dismiss a cause of action under Federal Rule of Civil Procedure 12(b)(6) for "failure to state a claim upon which relief can be granted." Such a motion "is a test of the plaintiff's cause of action as stated in the complaint, not a challenge to the plaintiff's factual allegations." *Golden v. City of Columbus*, 404 F.3d 950, 958–59 (6th Cir. 2005). This Court must construe the complaint in the light most favorable to the non-moving party. *Total Benefits Planning Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F. 3d 430, 434 (6th Cir. 2008). If more than

one inference may be drawn from an allegation, this Court must resolve the conflict in favor of the plaintiff. *Mayer v. Mylod*, 988 F.2d 635, 638 (6th Cir. 1993). This Court cannot dismiss a complaint for failure to state a claim "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Id*.

This Court, however, is not required to accept as true mere legal conclusions unsupported by factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). A complaint's factual allegations "must be enough to raise a right to relief above the speculative level" and "state a claim of relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 & 570 (2007). A claim is plausible when it contains "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

## B.  Motion to Intervene

Intervention as of right under Rule 24(a)(2) requires a timely motion by a movant who:

> [C]laims an interest relating to the property or transaction that is the subject of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest.

Fed. R. Civ. P. 24(a)(2). The Sixth Circuit requires movants to establish: (1) that the motion was filed timely; (2) that the intervenor has a substantial legal interest in the subject matter of the case; (3) that an interest will be impaired without intervention; and (4) the current parties inadequately protect the proposed intervenor's interest. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)). While the Sixth Circuit interprets the interest sufficient to invoke intervention of right expansively,

it "does not mean that any articulated interest will do." *Granholm*, 501 F.3d at 780. The analysis addressing the existence of a substantial legal interest "is necessarily fact-specific. *Id.*

Permissive intervention under Rule 24(b)(1) permits a court to exercise its discretion to allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." If the motion is timely and there is at least one common question of law or fact, the Court considers whether intervention would cause undue delay or prejudice to the original parties, and any other relevant factors. *U.S. v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005); *Shy v. Navistar Intern. Corp.*, 291 F. R. D. 128, 138 (S.D. Ohio 2013).

### III.    MOTION TO DISMISS

### A.  Direct Civil Liability Under the TVPRA 18 U.S.C. § 1595

This Court has undertaken extensive analysis of the issue of civil liability of hotel defendants in sex trafficking cases under the TVPRA.[1] The TVPRA has two provisions relevant to this case. First, the TVPRA provides for criminal penalties set forth in 18 U.S.C. § 1591:

(a) Whoever knowingly—

(1) in or affecting interstate or foreign commerce, . . . recruits, entices, harbors, transports, provides, obtains, advertises, maintains, patronizes, or solicits by any means a person; or

(2) benefits, financially or by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1), knowing, or, except where the act constituting the violation of paragraph (1) is advertising, in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means will be used to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

---

[1] *See M.A. v. Wyndham Hotels & Resorts, Inc. et al.*, 425 F. Supp. 3d 959 (S.D. Ohio 2019); *A.R. v. Wyndham Hotels & Resorts, Inc., et al.*, No. 2:21-cv-4935, 2022 WL 17741054 (S.D. Ohio Dec. 16, 2022); *A.W. v. Red Roof Inns, Inc., et al.*, No. 2:21-cv-4934 (S.D. Ohio Dec. 16, 2022); *T.P. v. Wyndham Hotels & Resorts, Inc., et al.*, No. 2:21-cv-4933, 2022 WL 17363234 (S.D. Ohio Dec. 1, 2022); *H.H. v. G6 Hospitality, LLC, et al.*, No. 2:19-cv-755, 2019 WL 6682152 (S.D. Ohio Dec. 6, 2019); *Doe S.W. v. Lorain-Elyria Motel, Inc., et al.*, No. 2:10-cv-1194, 2020 WL 1244192 (S.D. Ohio Mar. 16, 2020); *A.C. v. Red Roof, Inc., et al.*, No. 2:19-cv-4965, 2020 WL 3256261 (S.D. Ohio Jun. 16, 2020).

18 U.S.C. § 1591(a). Secondly, and central to Plaintiff's claim, is the standard for civil liability under the TVPRA set forth in 18 U.S.C. § 1595:

> An individual who is a victim of a violation of this chapter may bring a civil action against the perpetrator (or whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of this chapter) in an appropriate district court of the United States and may recover damages and reasonable attorneys fees.

18 U.S.C. § 1595(a).

A § 1595(a) claim can stand alone, and civil defendants need not have committed the underlying criminal sex trafficking offense under § 1591. *M.A.*, 425 F. Supp. 3d 959, 964 (S.D. Ohio 2019); *H.H.*, 2019 WL 6682152 at *2 (citing Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.")); *Plaintiff A v. Schair*, No. 2:11-cv-00145-WCO, 2014 WL 12495639, at *3 (N.D. Ga. Sept. 9, 2014) (explaining that the 2008 amendments broadened the parties who could be sued for trafficking violations from only the perpetrator)). Therefore, T.E.'s allegation that she is a victim of trafficking under § 1591 sufficiently pled that she is "a victim of this chapter" pursuant to § 1595(a).

This Court analyzes Plaintiff's direct civil liability claim under the "beneficiary theory" of § 1595(a), which requires: (1) the person or entity must "knowingly benefit[], financially or by receiving anything of value"; (2) from participating in a venture; (3) that the "person knew or should have known has engaged in an act in violation of this chapter." § 1595(a). A plaintiff may satisfy these elements by showing that "defendant's own acts, omissions, and state of mind establish each element." *J.L. v. Best W. Int'l, Inc.*, 521 F. Supp. 3d 1048, 1060 (D. Colo. 2021).

### 1. *Parties' Arguments*

Defendants argue that the TVPRA does not create an affirmative duty to prevent trafficking. (ECF No. 14 (citing *A.B. v. Marriott Int'l, Inc.*, 455 F. Supp. 3d 171, 182 (E.D. Pa. 2020) ("We do not read the Act as requiring hotels (and other businesses or professions possibly earning money from trafficking) to affirmatively stop the trafficking.")). Wyndham maintains that Plaintiff's knowledge claim rests on allegations of general knowledge that there exists a "human trafficking epidemic" in the "hospitality industry." (*Id.* at 12–14) (explaining that there is a difference in the scienter gap between "should have known" and "might have been able to guess"). Therefore, Wyndham alleges that it cannot be held liable for the misuse of its property—especially where there is no indication that Wyndham knew of Plaintiff's alleged trafficking. (*Id.* at 6, 11–12). According to Wyndham, the Complaint does not suggest a relationship between Wyndham and T.E.'s traffickers, let alone an overt business venture. (*Id.* at 3, 11). As a franchisor, Wyndham alleges that it is not the operator, owner, or employer of the Days Inn and associated staff. (*Id.* at 6–7). It maintains that it is too far removed from the alleged harm for it to have participated in a trafficking or business "venture" profiting from trafficking (*Id.* at 7,10).

Plaintiff responds that Wyndham controls every aspect of the day-to-day operations of its branded hotels including how reservations are made, room rates, what form of payment is taken, how employees are hired and trained, what employees wear, how complaints and customer feedback are handled, the temperature of the coffee served, and the number of pillows on each bed. (ECF No. 19 at 3). As such, Plaintiff alleges that Wyndham was intimately aware that sex trafficking was occurring at their hotels based on incident reports, customer reviews, and collection of online data, but failed to implement policies and procedures to combat the alleged harm. (*Id.* at 8–9). As a joint employer of the Days Inn staff and Wyndham's failure to act, Plaintiff concludes

that the joint venture definition is met. (*Id.* at 12). And Plaintiff maintains that Wyndham cannot maintain the ostrich defense: "bury its head in the sand." (*Id.* at 10).

Wyndham replies that Plaintiff's arguments are replete with inconsistencies. (ECF No. 23). First, Wyndham argues that Plaintiff acknowledges that the Days Inn where she was trafficked was franchised—allegedly failing to meet the minimum pleading standards to connect the dots between Wyndham and Plaintiff. (*Id.* at 2–3 (citing *Williams v. Richland Cnty. Children Servs.*, 489 Fed. App'x 848, 852 (6th Cir. 2012) ("contradictory" allegations are "implausible" for purposes of Rule 8)). Second, Wyndham argues that Plaintiff's accusations, such as the Wyndham hotel bar staff serving her alcohol to make her easier for the traffickers to control and that Wyndham saw T.E.'s trafficker's commercial advertising for her on Backpage, are incendiary and appear first in Plaintiff's response to the Motion to Dismiss. (*Id.* at 4–5). Third, Wyndham claims that Plaintiff's legal arguments have changed from previous, similar litigation. (*Id.* at 6–7).

### 2. *Knowing benefit*

T.E. has sufficiently alleged that Defendant "knowingly benefited" financially from her sex traffickers' venture. The first element merely requires that Defendant knowingly receives a financial benefit, not that the perpetrator have actual knowledge of the sex trafficking venture. *A.C.*, 2020 WL 3256261, at *4. As this Court found in *M.A.* and *H.H.*, "the rental of a room constitutes a financial benefit from a relationship with the trafficker sufficient to meet this element of the § 1595(a) standard." *M.A.*, 425 F.Supp.3d at 965; *H.H.*, 2019 WL 6682152 at *2. *See also J.L.*, 521 F.Supp.3d at 1061 (allegations that a hotel defendant received a percentage of room revenue where trafficking occurred met the knowingly benefited element of the TVPRA); *Gilbert v. U.S. Olympic Comm.*, 423 F.Supp.3d 1112, 1137 (D. Colo. 2019) (finding the forced labor provision of § 1589(b) does not "require[ ] the party to benefit from the [forced] labor or services

for liability to attach"). Because T.E. alleges that Defendant benefited financially from renting rooms to her traffickers, the pleadings sufficiently meet this element of the § 1595(a) standard.

### 3. Knew or should have known the venture was engaged in trafficking

A defendant cannot be liable under 18 U.S.C. § 1595(a) unless it "knew or should have known" that the venture was engaged in sex trafficking. The phrase "'knew or should have known,' echoes common language used in describing an objective standard of negligence." *M.A.*, 425 F. Supp. 3d at 965. Therefore, constructive knowledge of trafficking crimes is sufficient for liability to attach. *Id.* at 970 (citing *Jean-Charles v. Perlitz*, 937 F.Supp.2d 276, 288–89 (D. Conn. 2013)); 18 U.S.C. § 1595(a). This Court has held that notice of "the prevalence of sex trafficking generally at [ ] hotels," the failure "to take adequate steps to train staff in order to prevent its occurrence," and signs that "should have alerted staff to [Plaintiff's] situation" are sufficient to meet the constructive knowledge requirement. *Id.* at 968.

In *Ricchio v. McLean*, the plaintiff alleged that the hotel owner and the trafficker were working together in a sex trafficking scheme evidenced by a "high-five" while discussing "getting this thing going again," a past business relationship between the trafficker and hotel owner, and allegations that one of the hotel owners had gone to the victim's room and "had shown indifference to [plaintiff's] obvious physical deterioration." *Ricchio*, 853 F. 3d at 555. Plaintiff alleged that while "in plain daylight view of the front office of the motel," her trafficker "kick[ed] her and force[d] her back toward the rented quarters when she had tried to escape." *Id.* The Court concluded that the defendants "acted, at least, in reckless disregard" of the nature of the venture for purposes of § 1589 and § 1595. *Id.* at 557. Conversely, in *Lawson v. Rubin*, plaintiffs sued Blue Icarus, the owner of a condo that it leased to Howard Rubin who was procuring women then sexually assaulting and abusing them at that location. No. 1:17-cv-6404 (BMC), 2018 WL

2012869, at *2 (E.D.N.Y. Apr. 29, 2018). The court found the plaintiff's allegations of one police visit after a fight ensued and one ambulance sent to the residence in six years insufficient to hold Blue Icarus liable under § 1595. The Court reasoned that even if Blue Icarus would have done further investigation following the incidents, it would not have uncovered to any more information about the alleged trafficking. *Lawson*, 2018 WL 2012869, at **13–14.

T.E. allegations do not rise to the level of those present in *Ricchio*, but neither are they as sparse as the facts presented in *Lawson*. Wyndham cannot allege that Plaintiff merely pleads that Wyndham has "general knowledge" of sex trafficking in the industry and that it can escape liability for constructive knowledge based on the franchise model. Wyndham had constructive knowledge of trafficking occurring at its hotels. 18 U.S.C. § 1595(a). T.E. alleges: (1) hotel staff observed the physical abuse, intoxication, and control of T.E. by her traffickers and "johns" within the branded properties; (2) local hotels "regularly reported customer data and other indicators of trafficking including suspicious criminal activity, web data indicating use of commercial sex websites, and data associated with reservations" to Wyndham; (3) Wyndham has access to reviews left by guests online about the prevalence of human trafficking and physical violence in their branded properties; and (4) Wyndham has access to public police reports and internal reports generated by hotel staff regarding sex trafficking at the branded hotels. (ECF No. 5, ¶¶ 55–63, 75–77, 86).

In comparable environments, courts have found failure to implement policies sufficient to combat a known problem in one's operations constitutes willful blindness or negligence. *See Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 758–79 (1998) (holding where a "supervisor's sexual harassment is outside the scope of employment because the conduct was for personal motives," an employer can still "be liable . . . where its own negligence is a cause of the harassment" because it "knew or should have known about the conduct and failed to stop it");

*Brown v. Corr. Corp. of Am.*, 603 F.Supp.2d 73, 81 (D.D.C. Mar. 26, 2009) (finding that complaint sufficiently alleged willful blindness under § 1983 where defendants knew that a supervisor at a correctional facility raped his employee, sexual harassment at the facility "was not an isolated incident," and defendants failed "to implement and effectuate the appropriate policies . . . to remedy and/or prevent the discriminatory conduct, sexual abuse and sexual harassment and rape").

Here, T.E. alleged that Defendant was on notice about the prevalence of sex trafficking at its hotels and publicly acknowledged their commitment to combating "modern slavery,"[2] yet failed to take steps to prevent its occurrence. In accordance with this Court's previous rulings, these allegations pass muster. *See e.g., M.A.*, 425 F.Supp.3d 959 (finding corporate defendants had constructive knowledge of sex trafficking of plaintiff in defendant branded hotel). In fact, T.E.'s allegations provided further evidence of constructive knowledge held by Wyndham beyond that alleged by plaintiffs with nearly identical claims against Wyndham in similar litigation before this Court. Specifically, T.E. alleges that Wyndham had access to reservation, payment, internet, and public safety reporting data that reinforced the fact that, based on Plaintiff's pleadings, Wyndham was aware that sex trafficking in the industry not only occurred in their own branded hotels, but in the Days Inn in Columbus. Therefore, this Court finds that T.E.'s Complaint sufficiently alleges constructive knowledge under § 1595 for purposes of surviving this Motion to Dismiss.

### 4. Participation in a venture

This Court held that participation in a venture under § 1595 does not require actual knowledge of trafficking crimes but requires "at least a showing of a continuous business relationship between the trafficker and the hotels such that it would appear that the trafficker and the hotels have established a pattern of conduct or could be said to have a tacit agreement." *M.A.*,

---

[2] *See Modern Slavery Statement*, Wyndham Hotels & Resorts, (Jun. 1, 2018), https://corporate.wyndhamhotels.com/modern-slavery-statement/.

425 F.Supp.3d at 970 (citing *Jean-Charles v. Perlitz*, 937 F. Supp. 2d at 288–89); *see also Ricchio*, 853 F.3d at 555 (finding sufficient allegations that, among other things, the trafficker and hotel owner had prior dealings); *Doe S.W.*, 2020 WL 1244192, at *6–7 (finding allegations that defendant hotels repeatedly rented rooms to individuals they should have known were traffickers based on the totality of the circumstances, were sufficient to survive a Rule 12(b)(6) motion). Further, participation in a venture under the TVPRA does not require an "overt act." *See e.g., J.L.*, 521 F. Supp. 3d at 1062; *E.S. v. Best W. Int'l Inc.*, 510 F.Supp.3d 420, 427 (N.D. Tex. 2021); *M.A.*, 425 F.Supp.3d at 968–69; *S.J.*, 473 F.Supp.3d at 153–54; *Doe S.W.*, 2020 WL 1244192, *6; *J.C. v. Choice Hotels Int'l, Inc.*, 2020 WL 3035794, at *1 n. 1 (N.D. Cal. June 5, 2020). While T.E. alleges that she was trafficked, the question remains whether Wyndham participated in a commercial venture benefiting from T.E.'s trafficking.

Wyndham argues that this Court should follow the lead of the Eleventh Circuit which found in a TVPRA case with similar facts that the defendant hotel franchisors financially benefitted from rental of hotel rooms to traffickers, but that the franchisors did not participate in an alleged common undertaking. (ECF No. 14 at 9 (citing *Doe #1 v. Red Roof Inns, Inc.*, 21 F.4th 714, 726–27 (11th Cir. 2021)). First, the Eleventh Circuit's decision is not controlling here. Second, while the Eleventh Circuit addresses whether the hotel franchisors were part of a sex trafficking venture, they never addressed the "commercial venture" theory of participation in a sex trafficking venture. Here, T.E. alleges that Wyndham: (1) profited from the rooms T.E.'s traffickers rented; (2) maximized profits by failing to refuse room rentals to potential traffickers and by failing to implement new training procedures; and (3) had expansive control over franchisee policies and operations but did not use that power to hold the franchisees accountable. (ECF No. 5, ¶¶ 81–88).

Despite the parties' differing allegations about Defendant's operational role in the local hotels, it is not the role of this Court to resolve factual disputes at this stage of the litigation. *M. L. v. Craigslist Inc.*, No. C19-6153 BHS-TLF, 2020 WL 6434845, at *6 (W.D. Wash. Apr. 17, 2020), *report and recommendation adopted*, No. C19-6153 BHS-TLF, 2020 WL 5494903 (W.D. Wash. Sept. 11, 2020). Construing these allegations in favor of the Plaintiff, this Court finds that Plaintiff's allegations that Wyndham profited, failed to implement policies, and maintained expansive control over the hotel operation standards meet § 1595's definition of "participation in a venture." Here, Defendant was involved in a business venture with the franchisee hotels, and both groups benefitted by renting rooms to traffickers despite having constructive knowledge of ongoing trafficking based on the totality of the circumstances. Because Plaintiff's allegations meet the three-pronged requirement of 18 U.S.C. § 1595, Plaintiff has sufficiently stated a claim that Defendant is directly, civilly liable under the TVPRA.

Of note, Plaintiff incorrectly argued in her response that Wyndham's actions meet § 1591(e)(4)'s definition of "participation in a venture." In *M.A.*, this Court not only ruled that the definition of "participation in a venture" from § 1591(e)(4) was not applicable to § 1595, but plaintiff's Counsel, who also represent T.E., argued as much. While this mistake is not detrimental to Plaintiff's allegations, Plaintiff's Counsel is reminded to review this Court's past rulings as it is the law of the case.

## B.  Vicarious Liability

### 1.  *Parties' Arguments*

Wyndham also alleges Plaintiff fails to plead properly vicarious liability under the TVPRA because Wyndham is not a joint employer of the Days Inn employees due to the franchise relationship. (ECF No. 14 at 15). Wyndham argues that this Court previously misstated the law of

franchisor liability under the Lanham Act when it concluded that Wyndham could be held vicariously liable for TVPRA violations by the franchisees because it shares the same commercial objectives. (*Id.* at 16 (citing *A.R.*, 2022 WL 17741054, at * 8 – 9). To make that conclusion, Wyndham maintains, would undermine the entire franchise model, creates an agency relationship, and opens franchisors up to liability for all franchisee actions. (*Id.* at 17). Further, Wyndham argues that its imposition of brand standards cannot give rise to agency under federal or state law. (*Id.*).

In rejoinder, Plaintiff alleges two theories of indirect liability: (1) agency theory because Wyndham allegedly controls the day-to-day activities of the hotels; and (2) joint employer theory because Wyndham is liable as an employer of hotel staff. (ECF No. 19 at 13 (citing *Broock v. Nutri/System, Inc.*, 654 F. Supp. 7, 10–11 (S.D. Ohio 1986)). Plaintiff rejects Wyndham's argument regarding the Lanham Act by stating that Wyndham's liability to the franchisee based on federal trademark law is only one of many factors that demonstrate the agency theory is applicable to Wyndham's extensive control over the hotel. (*Id.* at 14). Again, Plaintiff argues that a joint theory of employment applies here because Wyndham exercises significant control over the franchisees' hiring, training, corporate culture, policies, and compensation. (*Id.* at 15).

Wyndham replies that Plaintiff first mentions the term "joint employer" and variations thereof in opposition to Wyndham's Motion to Dismiss. (ECF No. 23 at 9). Wyndham argues that Plaintiff cannot plead new theories of liability in a response brief. (*Id.* at 10). Wyndham maintains that joint employer liability is not a basis for making a franchisor liable to third parties for common law torts by franchisee staff. (*Id.* at 10 (citing *Bricker v. R & A Pizza, Inc.*, 804 F. Supp. 2d 615, 621-22 (S.D. Ohio 2011)). Further, Wyndham alleges that requiring franchisees to adhere to brand standards does not suggest day-to-day control over the hotels. (*Id.* at 11).

*2. Court's Analysis & Findings*

A plaintiff can also satisfy the elements of § 1595's beneficiary theory by imputing "to the defendant the acts, omissions, and state of mind of an agent of the defendant" through indirect or vicarious liability. *J.L.*, 521 F. Supp. 3d at 1060. The TVPRA, however, does not address the issue of indirect or vicarious liability; therefore, federal district courts that have adjudicated this issue must apply common law to fill in the gaps. *Norfolk Redevelopment and Hous. Auth. v. Chesapeake and Potomac Tel. Co. of Va.*, 464 U.S. 30, 35–36 (1983) (explaining that the traditional rules of statutory construction advise that statutes are presumed not to disturb the common law "unless the language of the statute [is] clear and explicit for this purpose."); *see also In re Nicole Gas Prod., Ltd.*, 581 B.R. 843, 850 (B.A.P. 6th Cir. 2018), *aff'd sub nom., Nicole Gas Prod., Ltd.*, 916 F.3d 566 (6th Cir. 2019) (explaining that statutes are presumed to embrace the common law extant at their enactment). In the past, this Court, and other district courts, have applied the state common law of vicarious liability when addressing indirect liability arguments under the TVPRA. *M.A.*, 425 F. Supp. 3d at 971 (applying Ohio agency law); *see also A.B.*, 455 F. Supp. 3d at 194–95 (applying Pennsylvania agency law); *S.J.*, 473 F. Supp. 3d at 158–59 (applying New York agency law). Since this Court's ruling in 2019, another district court chose to apply the federal common law of vicarious liability in a TVPRA case. *A.B.*, 484 F. Supp. 3d at 939–40 (citing Ninth Circuit cases where the court applied the federal common law of agency when the federal statute did not otherwise provide direction).

As this Court has previously outlined, the Sixth Circuit has yet to rule on whether the federal or state common law of vicarious liability should be applied under the TVPRA. While this Court has previously entertained arguments for both given the nearly identical analysis required under federal and Ohio common law, this Court will proceed under a federal common law analysis

14

of the issue. This approach brings the analysis in line with the Sixth Circuit's approach to applying the federal common law of vicarious liability to federal statutes that do not expressly provide direction on vicarious liability arguments. *See e.g., Marr v. Rife*, 503 F.2d 735, 740–41 (6th Cir. 1974) (explaining that in determining the extent of liability of the owner of a real estate agency for violations of Fair Housing Act by his agent, court should apply federal law and should not be restricted by respondeat superior law or law of vicarious liability of the various states); *Keating v. Peterson's Nelnet, LLC*, 615 Fed. App'x 365, 371–72 (6th Cir. 2015) (citing *In the Matter of Dish Network, LLC*, 28 FCC Rcd. 6574, 6584 (May 9, 2013)) (explaining that the FCC concluded that defendants may be held vicariously liable for Telephone Consumer Protection Act ("TCPA") violations under federal common law agency principles, including apparent authority and ratification) *but cf. Pension Benefit Guar. Corp. v. Findlay Indus., Inc., et al.*, 902 F.3d 597, 611 (6th Cir. 2018) (deciding to apply state common law to an ERISA contract dispute regarding successor liability because a federal court may take direction from "the law of the state in which it sits" so long as the standard used "best comports with the interests served by ERISA's regulatory scheme," but explaining that "as a general matter, the court must look to the federal common law and should draw guidance from state common law only when federal common law does not provide an established standard").

### a. Agency

The Sixth Circuit relies on the Restatement of Agency when applying the federal common law of vicarious liability. *Johansen v. HomeAdvisor, Inc.*, 218 F.Supp.3d 577, 586 (S.D. Ohio 2016). Agency is most commonly defined as the "fiduciary relationship that arises when one person (a 'principal') manifests assent to another person (an 'agent') that the agent shall act on the principal's behalf and subject to the principal's control, and the agent manifests assent or otherwise

consents so to act." *Restatement (Third) of Agency* § 1.01 (2006). A defining element of agency "is the principal's right to control the agent's actions" such as "[t]he power to give interim instructions." *Id.* at cmt. f (1); *see also Savanna Group, Inc. v. Trynex, Inc.*, No. 10-C-7995, 2013 WL 4734004, at *5 (N.D. Ill. Sept. 3, 2012) (explaining that "[t]he power to give interim instruction" is an element that "distinguishes principals in agency relationship from those who contract to receive services provided by persons who are not agents."). As a result of that power, "[a] master is subject to liability for the torts of his servants committed while acting in the scope of their employment." *Burlington Indus. Inc.*, 524 U.S. at 755–56 (1998) (quoting *Restatement (Second) of Agency* § 219(1) (1957)). While the mere existence of a franchise does not establish an agency relationship, the franchise model also does not preclude wholesale franchisors from vicarious liability under an agency theory. *Bricker*, 804 F.Supp.2d at 623 ("[T]he existence of a franchisor-franchisee relationship between persons does not in itself *preclude* the existence of a principal-agent relationship between them."). To determine whether "a principal-agent relationship exists, courts consider the same factors 'as in the absence of a franchisor-franchisee relationship.'" *Id.* (citing *Taylor v. Checkrite, Ltd.*, 627 F. Supp. 415, 416 (S.D. Ohio 1986)).[3]

T.E. alleges that Wyndham exercises day-to-day control over the Days Inn at issue here. (ECF No. 5, ¶¶ 95–105). T.E. argues that this includes requiring franchisees to: (1) use Wyndham's property management system; (2) provide audit reports and other records; (3) conduct regular inspections and submit quality assurance evaluation reports to Wyndham; (4) gather reservation, payment, and occupancy data through Wyndham's centralized system; (5) use approved Wi-Fi and security vendors; (6) comply with Wyndham's standardized marketing and insurance coverage

---

[3] Under Ohio law, the "determinative factor in deciding an agency relationship between a franchisor and a franchisee is the degree of control the franchisor has over the operations of the franchisee's business." *Coleman v. Chen*, 712 F. Supp. 117, 124 (S.D. Ohio 1988) (quoting *Puente v. Frisch's Restaurants, Inc.*, No. 86-134 slip op., 1986 WL 14372, at *2 (Ohio Ct. App. Dec. 12, 1986)).

requirements; (7) comply with Wyndham's regulated room rental rates; (8) receive permission to modify the branded properties; and (9) implement other brand standards. (*Id.* at ¶ 96). These allegations are sufficient to meet the pleading standards of Federal Rule of Civil Procedure 8 to demonstrate Wyndham's control over the franchisee properties for purposes of an agency relationship and vicarious liability.

*b. Joint Employer Theory*

Whether two employers are a joint employer also often turns on how much control one exercises over the other. *See e.g.*, *Int'l Longshoremen's Ass'n, AFL-CIO, Local Union No. 1937 v. Norfolk Southern Corp.*, 927 F.2d 900, 902 (6th Cir. 1991) (articulating test for joint employer status under the NLRA as "the interrelation of operations between the companies, common management, centralized control of labor relations, and common ownership."); *Sanford v. Main Street Baptist Church Manor, Inc.*, 327 Fed. App'x 587, 594 (6th Cir. 2009) (adopting the following test for Title VII joint employer status: "(1) the extent of the employer's control and supervision over the worker, including directions on scheduling and performance of work; (2) the kind of occupation and nature of skill required, including whether skills are obtained in the work place; (3) responsibility for the costs of operation, such as equipment, supplies, fees, licenses, workplace, and maintenance of operations; (4) method and form of payment and benefits; and (5) length of job commitment and/or expectations.").

While Plaintiff does not use the specific words "joint employer" in her Complaint, she does allege that "Wyndham is an employer of the staff at its branded properties." (ECF No. 5, ¶ 104). Plaintiff's joint employer theory must fail, however, as she simply alleges that Wyndham posts open hotel positions on its parent website, sets the core values and culture for all hotel employees, and sets employee benefits policies in the Complaint. (*Id.*). Any mention of control over hiring,

training, and other employment-specific policies appears first in Plaintiff's Response to the Motion to Dismiss. *Cf. Tucker v. Union of Needletrades, Indus. and Textile Emp.*, 407 F.3d 784, 788 (6th Cir. 2005) (explaining that a non-moving party may not raise a new legal claim for the first time in a responsive pleading). Joint employers "*share* or co-determine those matters governing the essential terms and conditions of employment" *Swallows v. Barnes & Noble Book Stores, Inc.* 128 F.3d 990, n. 4 (6th Cir. 1997) (quoting *N.L.R.B. v. Browning-Ferris Indus. of Pa., Inc.*, 691 F.2d 1117, 1123 (3d Cir. 1982) (emphasis in original)). While setting company culture and employment benefits certainly fall within essential employment terms, these allegations do not include setting other essential terms and conditions of employment such as hiring, training, retention, advancement of staff, and setting rates of pay. *See A.R.*, 2022 WL 17741054, at *11 (finding joint employer theory of vicarious liability sufficiently pleaded in nearly identical TVPRA litigation where Plaintiff pled that Defendant Wyndham promulgated "policies, procedures, and standards governing the hiring, training, retention, and advancement of on-the-ground employees and setting their rates of pay.").

While the factors this Court must consider when analyzing both agency and joint employer theories of vicarious liability are very similar, important among those to establish a joint employer theory of vicarious liability is the control exercised by the franchisor specific to employment policies. That is not present here. Therefore, Defendant's Motion to Dismiss as it relates to Plaintiff's joint employer theory of vicarious liability is **GRANTED**.

### C.  Liability Under CAVRA, 18 U.S.C. § 2255(a)

#### 1.  Parties' Arguments

Wyndham argues that Plaintiff fails to state a claim under CAVRA because the statute only provides for a cause of action against the perpetrators of the crime against the minor. (ECF No. 14

at 19). Wyndham alleges that Plaintiff does not plead that Wyndham ever interacted with someone who committed a trafficking crime. (*Id.*). According to Wyndham, because Congress did not intend for § 2255 to provide for a cause of action under vicarious liability, they also cannot be held vicariously liable. (*Id.*). Further, Wyndham argues that the scienter requirement of § 1591(a)(2), to which Plaintiff points, carries a higher *mens rea* threshold of "reckless disregard" for the trafficking ventures commission of trafficking crimes, as opposed to constructive knowledge. (ECF No. 23 at 12–13). Defendant argues that the "collective knowledge" doctrine Plaintiff advances to support her argument has been widely condemned where it is used to hold large corporations liable by piecing together knowledge held by various corporate individuals (*Id.* at 13 (citing *U.S. v. Sci. Applications Int'l Corp.*, 626 F.3d 1257, 1275 (D.C. Cir. 2010)). Wyndham maintains that Plaintiff cannot meet the "reckless disregard" scienter requirement by arguing that knowledge held by employees of "independent, non-party franchisees" meets the standard. (*Id.*).

Conversely, Plaintiff alleges that Wyndham violated § 1591 as a perpetrator of the trafficking because it knew of the trafficking or acted with reckless disregard to the alleged trafficking. (ECF No. 19 at 16). Plaintiff also alleges that Wyndham's employees, the hotel staff, had actual knowledge of the harm alleged, which imputes knowledge onto Wyndham under a "collective knowledge" theory. (*Id.* at 17 (citing *United States v. Bhimani*, No. 3:17-cr-324, 2021 WL 5179196, at *12 (M.D. Pa. Nov. 8, 2021)) (upholding corporation's TVPRA conviction where hotel manager rented rooms to pimps and let them pay for rooms with proceeds from commercial sex)). Plaintiff also alleges that Wyndham violated § 1591(a)(2) by "assisting, supporting or facilitating" a sex-trafficking venture through the policies and procedures they implemented and failed to implement—in other words, aiding and abetting. (*Id.* at 19–20). Specifically, Plaintiff argues that Wyndham furthered the offense by providing the rooms, disposing of evidence and

intoxicating T.E., and the hotel employees' decision to turn a blind eye can be imputed as criminal intent onto Wyndham. (*Id.*).

### 2. *Court's Analysis & Findings*

Defendant Wyndham alleges that a § 2255 claim may be brought only against the perpetrators of the crimes against the minors. Under the TVPRA, "whoever knowingly . . . benefits, financially or by receiving anything of value, from participation in a venture which has engaged in" a sex trafficking act, can be held criminally liable. 18 U.S.C. § 1591(a)(2). Further "any individual who is a victim of a violation of [§ 1591] may bring a civil action against . . . whoever knowingly benefits, financially or by receiving anything of value from participation in a venture which that person knew or should have known has engaged in an act in violation of [§ 1591]." 18 U.S.C. § 1595(a). Additionally:

> Any person who, while a minor, was a victim of a violation of section . . . 1591 [among others] . . . and who suffers personal injury as a result of such *violation* . . . may sue in any appropriate United States District Court and shall recover the actual damages such person sustains . . . .

18 U.S.C. § 2255(a) (emphasis added). A victim must establish liability as a predicate for the damages award—namely, that the victim's abuse violated a qualifying criminal statute. *Doe v. Boland*, 698 F.3d 877, 880–82 (6th Cir. 2012).

First, this Court previously concluded that Plaintiff is not required to plead that Defendant was convicted of committing the trafficking crimes against Plaintiff. *L.G. v. Red Roof Inns, Inc. et al.*, Case No. 2:22-cv-1924, ECF No. 33. Both the text of 18 U.S.C. §§ 1595 and 2255 require as a predicate that the plaintiff is a "victim of a violation" of 18 U.S.C. § 1591. In *Prewett v. Weems*, the Sixth Circuit held that the word "violation" in 18 U.S.C. § 2255 does not mean "conviction." 749 F.3d 454, 459 (6th Cir. 2014). In *Prewett*, the defendant was convicted of one child abuse crime based on seven child pornography videos found on his phone. *Id.* at 456–57. The district

20

court ruled that the defendant violated the underlying child pornography statute seven times, based on the seven videos, and the minimum damages awarded for a violation should be multiplied seven times. *Id.* at 457–58. On appeal, the Defendant argued that he should be liable for only one damage award because he was only convicted on one count. *Id.* The Sixth Circuit explained:

> *First,* the customary meaning of violation tends toward the broad (any failure to conform to a legal standard) rather than the narrow (a criminal conviction). *See, e.g.,* Oxford English Dictionary Online (3d ed. 2012) ("Infringement or breach, flagrant disregard or non-observance of some principle or standard of conduct or procedure". . . ; Black's Law Dictionary (9th ed. 2009) ("An infraction or breach of the law; a transgression ... [or t]he act of breaking or dishonoring the law; the contravention of a right or duty.") . . .

> *Second,* . . . the neighboring provisions of § 2255 use "violation" and "conviction" distinctively, suggesting that the different words have different meanings. Section 2255 applies when a victim shows a *"violation"* of the relevant criminal provisions, but the related criminal-forfeiture statute applies only when the government shows the defendant was "*convicted* of an offense." *Compare* 18 U.S.C. § 2253, *with* 18 U.S.C. § 2255 (emphases added) . . .

> *Third,* . . . [a]ddressing RICO's civil-remedies provision, which also contains a "violation" requirement, the Supreme Court held that the statute's language gave "no obvious indication that a civil action can proceed only after a criminal conviction." *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 488 (1985) [internal citations omitted]. The Court reasoned that "the term 'violation' does not imply a criminal conviction ... [but rather] refers only to a failure to adhere to legal requirements." *Id.* at 489.

*Id.* at 458. Therefore, a violation is not synonymous with a conviction.

Additionally, 18 U.S.C. § 2255 provides a broad remedial path for plaintiffs by establishing a statutory floor for damages, indicating the expansion, not narrowing, of parties who could be held liable. *Jane Doe No. 8 v. Royal Caribbean Cruises, Ltd.*, 860 F. Supp. 2d 1337, 1340 (S.D. Fla. 2012) ("And because the predicate criminal offenses and § 2255 are designed for different purposes, it does not follow that there must be symmetry in liability. In fact, the broad remedial purpose of § 2255—prescribing a minimum amount of statutory damages—would appear to counsel against limiting the scope of civil liability."). Congress did not use qualifying language to

limit liability to "the offender" or "the perpetrator." S*ee Bostock v. Clayton County, Georgia*, 140 S. Ct. 1731, 1738 (2020) ("This Court normally interprets a statute in accord with the ordinary public meaning of its terms at the time of its enactment. After all, only the words on the page constitute the law adopted by Congress and approved by the President. If judges could add to, remodel, update, or detract from old statutory terms inspired only by extratextual sources and our own imaginations, we would risk amending statutes outside the legislative process reserved for the people's representatives."). The legislative history of § 1595 similarly indicates that Congress intended to provide a broad remedial path for "victims of a violation" of § 1591. Cong. Research Serv., R40190, The William Wilberforce Trafficking Victims Protection Reauthorization Act of 2008 (P.L. 110-457): Criminal Law Provisions, at 16 (Jan. 29, 2009) (explaining that the Congressional Research Service interpreted the amendments to the TVPRA "create[ ] civil liability both for those who face criminal liability for their profiteering and those who do not.").

Because a defendant is not required to be criminally convicted of the predicate offense, it is enough to prove by a preponderance of the evidence that the defendant violated the enumerated statute. *See Smith v. Husband*, 376 F. Supp. 2d 603, 611–12 (E.D. Va. 2005) (examining legislative history to conclude Congress had intended § 2255 to provide a remedy for victims even absent a criminal conviction); *Doe v. Liberatore*, 478 F. Supp. 2d 742, 755 (M.D. Pa. 2007) (same); *Cisneros v. Aragon*, 485 F.3d 1226, 1232 (10th Cir. 2007) ("assum[ing] that a criminal conviction is not necessary for a defendant to face civil liability under" § 2255); *Doe v. Schneider*, 667 F. Supp. 2d 524, 529–530 (E.D. Pa. 2009) (requiring only that proper predicate statute violation is alleged in the complaint, along with supporting facts).

The TVPRA assigns liability to direct perpetrators of trafficking, *see* 18 U.S.C. § 1595(a)(1), but also assigns liability to those who financially benefit from participation in

trafficking ventures, *see* 18 U.S.C. §§ 1591(a)(2), regardless of whether those individuals or entities actually carried out the trafficking. Therefore, § 1951 does provide for a beneficiary theory of liability—in other words, those who benefit financially from participation in a venture that has engaged in an act of trafficking, as alleged by a preponderance of the evidence against Wyndham, constitutes a violation of § 1951. Plaintiff meets the preponderance of the evidence pleading standard by alleging that Wyndham ignored its statutory obligation to not benefit financially from a sex trafficking venture. (*T.E.*, ECF No. 5, ¶¶ 25); *see also* 18 U.S.C. § 1591(a)(2); *M.A. v. Wyndham*, 425 F. Supp. 3d at 968 (finding that "failure to implement policies sufficient to combat a known problem in one's operations can rise to the level of willful blindness or negligence"— implying an intentional failure to act); *N.S. v. Rockett*, No. 3:16-CV-2171, 2018 WL 6920125, at *5 (D. Or. Oct. 19, 2018) (concluding that minor's allegations that the male, adult defendant attempted to convince her to send a sexually suggestive photo of herself was sufficient to support the claim that the offender enticed her to display herself sexually for the purposes of producing an image in violation of § 2255).

This Court acknowledges that § 1591 is a criminal statute which carries a higher *mens rea* requirement than a civil statute, especially where, as here, the Plaintiff alleges a constructive knowledge, or negligence, standard. *See Does 1-6 v. Reddit, Inc.*, 51 F.4th 1137, 1141 (9th Cir. 2022) (explaining that the beneficiary theory of liability under § 1591 is higher: "to be held criminally liable as a beneficiary a defendant must have actual knowledge of the trafficking and must 'assist[], support[], or facilitate[e]' the trafficking venture" pursuant to 18 U.S.C. § 1591(e)(4)). Section § 2255, however, simply requires T.E. to demonstrate that she was a victim of a violation of § 1591, which T.E. is also required to prove to establish standing for § 1595. As detailed *supra*, T.E. meets the requirements of both civil statutes with the same allegations.

Therefore, this Court finds that T.E. has pled that Defendants profited financially from a commercial venture with traffickers who rented rooms in their hotels and failed to implement preventative policies. This is sufficient, under a beneficiary theory of liability, to allege Wyndham violated § 1591 for purposes of a motion to dismiss pursuant to 18 U.S.C. § 2255(c)(2).

This Court need not address Plaintiff's aiding and abetting theory of liability as Plaintiff meets her burden to state a claim under § 2255 by properly pleading a direct violation of § 1591.

### IV.    MOTION TO INTERVENE

#### A.  CIC's Argument

Pursuant to Federal Rule of Civil Procedure 24, Cincinnati Insurance Company ("CIC") moved to intervene to seek a declaratory judgment regarding its obligations, if any, to defend and/or indemnify AP Hotels, LLC, dba Red Roof Inn in Reynoldsburg Ohio. (ECF No. 7 at 2). AP Hotels lists Defendants Red Roof as additional insureds under the policy between CIC and AP Hotels. (*Id*. at 1). CIC seeks to participate in all aspects of the lawsuit. (*Id*. at 1). Red Roof has made a demand for defense and indemnity from CIC for Plaintiff's claims asserted against Red Roof. (*Id.* at 3). As a result, CIC argues it has a right to intervene, pursuant to Rule 24(a), to protect adequately its interests. (*Id.* at 4). Alternatively, CIC argues this Court should exercise its discretion to grant permissive intervention, pursuant to Rule 24(b)(1). (*Id.* at 4–5).

#### B.  Standard of Review

Intervention as of right under Rule 24(a)(2) requires a timely motion by a movant who:

> "[C]laims an interest relating to the property or transaction that is the subject of the action[] and is so situated that disposing of the action may as a practical matter impair or impede the movant's ability to protect its interest, unless existing parties adequately represent that interest."

Fed. R. Civ. P. 24(a)(2). The Sixth Circuit requires movants to establish: (1) that the motion was filed timely; (2) that the intervenor has a substantial legal interest in the subject matter of the case;

(3) that an interest will be impaired without intervention; and (4) the current parties inadequately protect the proposed intervenor's interest. *Coal. to Defend Affirmative Action v. Granholm*, 501 F.3d 775, 779 (6th Cir. 2007) (citing *Grutter v. Bollinger*, 188 F.3d 394, 397–98 (6th Cir. 1999)). While the Sixth Circuit interprets the interest sufficient to invoke intervention of right expansively, it "does not mean that any articulated interest will do." *Granholm*, 501 F.3d at 780. The analysis addressing the existence of a substantial legal interest "is necessarily fact-specific." *Id.*

Permissive intervention under Rule 24(b)(1) permits a court to exercise its discretion to allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." If the motion is timely and there is at least one common question of law or fact, the Court considers whether intervention would cause undue delay or prejudice to the original parties, and any other relevant factors. *U.S. v. Michigan*, 424 F.3d 438, 445 (6th Cir. 2005); *Shy v. Navistar Intern. Corp.*, 291 F. R. D. 128, 138 (S.D. Ohio 2013).

### C. Intervention as of Right

#### 1. Substantial legal interest

This Court begins its analysis with a discussion of Movant's asserted interests in this case—prong two of the Sixth Circuit's test.[4] T.E. argues that CIC's interest is contingent rather than direct. (ECF No. 8 at 4–5). Plaintiff adds that CIC's only interest in this Motion is to preserve its right to intervene under Ohio law, which requires insurance companies to move to intervene or else they may be bound by collateral estoppel. (*Id.* at 5); *see Howell v. Richardson*, 544 N. E. 2d 878, 881 (Ohio 1989).

---

[4] This Court begins the analysis with the second prong. CIC's motion to intervene was filed about two months after the Amended Complaint. Generally, courts have found timely motions filed at similar stages of the case. *Indiana Ins. Co. v. Midwest Maint.*, No. C-3-99-351, 2000 WL 987829, at *2 (S.D. Ohio Jan. 7, 2000) (finding motion to intervene timely when filed slightly over three months after the complaint before significant discovery had taken place). Because because this Court finds CIC's Motion fails for other reasons, it is not necessary to undergo analysis of the timeliness of this case. *See Stupak-Thrall v. Glickman*, 226 F.3d 467 (6th Cir. 2000).

CIC's interest here is not substantial, as courts have routinely denied intervention to insurers contesting coverage, finding their interest in the underlying action merely contingent and not related to the cause of action. *M.A.*, 2022 WL 622124, at *2 (finding the intervention interest of an insurer of defendant hotel franchisors merely contingent rather than substantial, where Plaintiff's claim focused on sex trafficking violations under the TVPRA); *J4 Promotions, Inc. v. Splash Dog, LLC*, No. 2:09-cv-136, 2010 WL 1839036, at *3 (S.D. Ohio May 3, 2010) (insurer's claim to intervene in a copyright infringement/unfair competition action was wholly unrelated to the underlying intellectual property dispute, making intervention inappropriate). CIC's interest is contingent because its stake in this litigation is dependent on a determination of Red Roof's liability and an adjudication of CIC's obligations under the insurance contract, which are separate from T.E.'s TVPRA claim. *See Siding and Insulation Co. v. Beachwood Hair Clinic, Inc.*, No. 1:11-cv-01074, 2012 WL 645996, at *1 (N.D. Ohio Feb. 28, 2012) (explaining that the insurer's interest was not direct nor substantial because it was contingent on the outcome of the litigation). It is therefore not sufficiently direct and immediate to justify intervention as a matter of right.

### *2. Interest will be impaired without intervention*

In response to CIC's assertion that its interests will be impaired without intervention (ECF No. 7 at 4), Plaintiff asserts that CIC's insurance dispute is not properly considered part of T.E.'s TVPRA claim, and such a dispute could "interfere with and in effect control the defense." (ECF No. 8 at 6 (citing *Travelers Indem. Co. v. Dingwell*, 884 F.2d 629, 639 (1st Cir. 1989)). Plaintiff argues that to add CIC would only delay and prejudice the original parties because a new, complex issue of insurance would be introduced into the litigation. (*Id.*). Further Plaintiff argues that CIC has other avenues to pursue this issue. (*Id.* at 6–7).

CIC is not without recourse here. An insurer in CIC's position may still pursue a separate declaratory judgment action. In 2007, the Ohio Supreme Court clarified that where an insurer has sought and has been denied intervention, collateral estoppel will not prohibit future litigation with respect to the insurer's coverage. *Gehm v. Timberline Post & Frame*, 861 N.E.2d 519, 523 (Ohio 2007). Therefore, as CIC recognizes in its Reply, it is not collaterally estopped from pursuing future litigation against Wyndham because it filed this Motion. (ECF No. 9 at 1). Additionally, there is a risk of "delay and prejudice to the original parties if complex issues of coverage are introduced into a dispute" because it would require Plaintiff "to become involved in a coverage dispute in which [she] does not yet have an interest." *M.A.*, 2022 WL 622124, at *4. Therefore, CIC's interests will not be impaired without intervention, and to allow it to intervene will only prejudice the existing parties.

### 3. Sufficiency of representation

As CIC's interest is contingent and its asserted interest will not be impaired if intervention is denied, this Court need not decide this factor. Even though insurance coverage is not yet at issue, it is not clear that CIC's interests would not be adequately represented by the existing parties. Plaintiff and Red Roof have a strong interest in litigating the issue of Red Roof's liability. Accordingly, CIC is not entitled to intervention as of right under Rule 24(a)(2).

### D. Permissive Intervention

Alternatively, CIC seeks permissive intervention under Rule 24(b) which permits a court to exercise its discretion to allow intervention on a timely motion by a movant who "has a claim or defense that shares with the main action a common question of law or fact." (ECF No. 7 at 4). It argues CIC's Motion is timely because this Motion was filed shortly after the Complaint and alleges at least one common question of law or fact. (*Id*. at 5). Plaintiff, meanwhile, argues that

CIC's dispute does not share common questions of law or fact with this lawsuit, and it is an unnecessary interjection that would require substantial time, energy, and delay to dispute and discover. (ECF No. 8 at 8–9).

A motion for permissive intervention "should be denied where the intervenor has not established that a common question of law or fact exists between [its] proposed claim and the claim of one or more of the existing parties." *Comtide Holdings, LLC v. Booth Creek Mgt. Corp.*, No. 2:07-cv-1190, 2010 WL 2670853, at *3 (S.D. Ohio Jun. 29, 2010). While CIC is interested in the question of liability in this case, it is only insofar as it effects its coverage obligations. This interest is contingent on Plaintiff's success and requires a separate inquiry into the language of the insurance policies, which is wholly separate from the TVPRA claims in the main action. Accordingly, CIC's interest is not based on a sufficiently similar question of law or fact.

Further, the risk of delay and prejudice weigh against permissive intervention. Introduction of complex coverage issues risk delay and prejudice to the original parties, and intervention would force Plaintiff "to become involved in a coverage dispute in which [she] does not yet have an interest." *J4 Promotions*, 2010 WL 1839036 at *4. Accordingly, given the foregoing analysis, this Court declines to exercise its discretion to grant CIC permissive intervention.

## V.    CONCLUSION

For the foregoing reasons, Wyndham's Motion to Dismiss is **GRANTED in part** as it relates only to Plaintiff's claim for vicarious liability under a joint employer theory **and DENIED in part** as to all other claims. (ECF No. 14). CIC's Motion to Intervene is **DENIED**. (ECF No. 7).

**IT IS SO ORDERED.**

<br>

**ALGENON L. MARBLEY**
DATED: August 28, 2023                **CHIEF UNITED STATES DISTRICT JUDGE**